**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Addam Brown*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Addam Brown, a married man, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Riverside Elementary School District No. 2, a public entity located in Maricopa County, Arizona, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff Addam Brown, by and through counsel, and for Plaintiff's Complaint against Defendant alleges;

**JURISDICTION AND VENUE**

1. This is an action against Riverside Elementary School District No. 2 (the "District") to remedy discrimination and retaliation on the basis of disability in violation of The Americans With Disabilities Act ("ADA") of 1990, as amended 42 U.S.C. § 12101, *et seq.,* including the Amendments contained in the ADA Amendments Act of 2008 and to

correct unlawful employment practices on the basis of disability to vindicate Plaintiff's rights, and to make them whole.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 as this matter involves a federal question.

3. Plaintiff filed a Charge of Discrimination and Retaliation based on Plaintiff's disability with the Equal Employment Opportunity Commission ("EEOC") on August 11, 2017, Charge No. 540-2017-02750. Concurrently, with the filing of the Charge, a Charge was filed with the U.S. Department of Education, Office of Civil Rights (OCR).

4. The EEOC issued a Right to Sue Letter on June 16, 202 and OCR has reopened its investigation.

5. Plaintiff has complied fully with all prerequisites for jurisdiction in this Court under the ADA. Jurisdiction of this Court is proper under the ADA, 42 U.S.C. §§ 12101, *et. seq.*

6. The unlawful employment practices described herein were committed within Maricopa County, State of Arizona. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Addam Brown (hereinafter "Plaintiff" or "Plaintiff Brown" or "they/them") is married and at all times relevant herein resided in Maricopa County, State of Arizona. Plaintiff is dual-gendered individual and does not associate with any specific gender but identifies with both genders.

8. Plaintiff is a disabled individual or was considered a disabled individual for the purpose of the ADA.

9. Defendant Riverside Elementary School District No. 2 (hereinafter "District") is a public entity located in Maricopa County, Arizona organized for the purpose of the

administration, support and maintenance of the public school. The District is organized under the laws of the State of Arizona to further the public interest providing public education. A.R.S. § 15-101.23.

10. Defendant District is an employer for the purpose of the ADA.

**BACKGROUND**

11. During the relevant time, Plaintiff was a doctoral candidate at Capella University (hereinafter "the University"). Plaintiff was seeking a doctorate of psychology with a specialization in school psychology program at Capella University (hereafter "The University").

12. Plaintiff took the position of school psychologist intern in the District, which was an unpaid volunteer position, that had the promise of potentially being hired by a District in Arizona upon completion of the internship and degree. This was set forth in the agreement Plaintiff signed with the District.

13. The internship was, in essence, a job interview for a position with the District.

14. Plaintiff's responsibilities included but were not limited to, completing psycho-educational evaluations, participating in multidisciplinary team meetings and conferences, providing counseling and crisis intervention, and providing technical assistance for classroom modifications regarding learning and behavior management.

15. These responsibilities were to be completed in three different areas of the school, Riverside Traditional School (PK-4th Grade), Kings Ridge Preparatory School (5th - 8th Grade), and New Horizons Academy (a contracted, private, special-education day-school focusing on behavior skills and academics).

16. Prior to the time of internship, Plaintiff had been diagnosed with Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, and Generalized Anxiety Disorder.

17. The struggles that accompany such diagnoses *(e.g.* impulsivity, lack of long-term attention, difficulties with expressing and receiving various aspects of speech and language, volume and tonal control, reading non-verbal forms of communication, and general concerns of individuals judgement and perception towards themselves) were expressed to Dr. Stephen Neal, Special Education Director for the District, before the internship began.

18. Dr. Neal described the internship as being a training program and providing training materials which would assist Plaintiff in overcoming Plaintiff's difficulties in order to successfully work in any educational environment in Arizona.

19. At the time of the internship, Plaintiff had an accommodation letter for Plaintiff to work with the University as a student and as a graduate student instructor.

20. Plaintiff made multiple attempts to have the District obtain or to provide Plaintiff with a copy of said letter, but the human resources department for the District (specifically Brittany Quisberg) denied a need for the letter.

21. Plaintiff also attempted on multiple occasions to provide documentation of Plaintiff's disability and requested accommodations to Dr. Neal, who denied a need for any such documentation until he specifically requested a report from a doctor on March 31st, 2017. This request came after a meeting on the same date with Dr. Neal and the Associate Superintendent, Mr. Ruben Gutierrez during which they approved the accommodation of a lip ring due to safety and social issues that arose with other chewable items which had been suggested as alternative accommodations, and offered Plaintiff a position in the District following the internship, as signed by Dr. Neal.

22. Plaintiff's accommodation was long standing with the University and the chair of the school psychology department at the time, along with Plaintiff's internship professor, who were aware of the required accommodations and medical needs.

23. Furthermore, it was expressed to Plaintiff by Dr. Neal, during an earlier internship Fair at which Plaintiff wore hair dreadlocks as a further accommodation for the sensory needs associated with Plaintiff's diagnoses, that he was not willing to interview Plaintiff notwithstanding Plaintiff's more than adequate resume due to Plaintiff's hair dreadlocks. Dr. Neal took this position even though there were no limitations on hairstyles listed in the employee dress code.

24. In addition to having the above listed diagnoses, Plaintiff also has a mixed chromosomal pattern, meaning that they are not XY or XX but that there are XXY, XYY, XX, and XY all present in the chromosomal markers in Plaintiff's DNA

25. Accordingly, in order to follow the written dress code for the school, Plaintiff had requested to wear a skirt (as jeans were not permitted) with a button up shirt, vest, tie, sport coat, and make-up, but was denied the opportunity to wear these articles of attire which were described as "appropriate" by the employee handbook.

26. Before the internship began at The District, Plaintiff was interviewed in two different formats for the position: first, in person, and second *via* an email questionnaire.

27. The first interview, on January 19, 2017, was an in-person interview with Dr. Neal, who was and is the supervisor for interns. Plaintiff did not wear his lip ring to the interview due to a comment Dr. Neal made at the School Psychology Internship Fair, held at Northern Arizona University in Phoenix on March 4, 2016, where Dr. Neal had requested that even if Plaintiff signed up to interview with The District, to not interview with Plaintiff because Dr. Neal would "…not be able to explain my dreadlocks to the administration" and for Plaintiff to move to Plaintiff's next interview.

28. Dr. Neal confirmed his thoughts later in the internship when he admitted that he had liked the resume and application, and was hoping it did not belong to "the guy in dreadlocks."

29. Plaintiff removed the dreadlocks after the internship fair due to encountering a lack of professional respect from staff at another district between the internship fair and Plaintiff's initial interview for the internship with the District.

30. Dr. Neal's demeanor towards the prospect of Plaintiff completing an internship with The District changed and he seemed more than excited to have Plaintiff as an intern as demonstrated in the rapidity with which Plaintiff was offered an internship.

31. This became more evident in touring the three schools which Plaintiff would be working which included" Dr. Neal's explanation of how the structure of internship would work; materials provided during the initial interview on January 19th; and Dr. Neal asking Plaintiff to go to the Human Resources Office to fill out paperwork to start immediately.

32. During the meeting with Brittany Quisberg, Human Resources representative, Plaintiff was given the volunteer application at which time Plaintiff asked Ms. Quisberg if there was any documentation of Plaintiff's disability and accommodation needed from the University which the District would need for the internship due to Plaintiff being covered under the Americans with Disabilities Act and having accommodations at the University. Ms. Quisberg stated that the District only needed the volunteer paperwork

33. The second interview was over email and Plaintiff was sent a questionnaire where Plaintiff responded to questions from Dr. Neal in order to assist him with Plaintiff's training experience. Within this electronic interview, Plaintiff made multiple references to struggles with interpersonal communication skills, an inability to recognize certain

emotions when working, reliance on research causing incorrect perceptions, and anxiety from criticism of staff members that report on small aspects of Plaintiff's behavior without understanding the whole of Plaintiff's overall behavior.

34. Dr. Neal had requested Plaintiff remove Plaintiff's lip ring during their first bi-weekly supervision on February 13, 2017. At this time, Plaintiff had advised Dr. Neal that the lip ring was an accommodation and Plaintiff needed it to stay productive.

35. Plaintiff asked if Dr. Neal needed documentation of this information as Plaintiff could obtain a letter from the University. Dr. Neal had then informed Plaintiff that the Superintendent of the District sees facial piercings as unprofessional.

36. Dr. Neal advised it would be ok to wear my accommodation when working independently but there would have to be a compromise for when working with students and parents. Dr. Neal stated, if it made Plaintiff productive, Plaintiff should be left alone, and he was going to attempt to help.

37. On February 16, 2017, Dr. Neal and Plaintiff had a meeting (hereinafter known as a "supervision") regarding Plaintiff moving from the district office to a "very back classroom" in the middle school to "avoid any further complications" between members of the district and Plaintiff or Plaintiff's accommodations.

38. Dr. Neal was given two subjective forms to record Plaintiff's progress through various aspects of the internship on February 23, 2017. Dr. Neal never filled out or returned the forms to Plaintiff which is a violation of the National Association of School Psychologists Principles for Professional Ethics, and further prevented Plaintiff from working in a successful environment as a person with a disability and his ability to learn and get necessary feedback.

39. On February 27, 2017, Plaintiff discussed with Dr. Neal, the importance of the accommodation (lip ring) and how this assisted with Plaintiff's productivity versus other accommodations that were asked to be attempted.

40. Dr. Neal and Plaintiff agreed that Plaintiff should take the rest of the day off to "reset" and utilize the appropriate accommodation for Plaintiff's needs to put a plan in place to discuss such accommodation with the needed people at the appropriate time.

41. The "reset" lasted for two days (2/27/17 and 2/28/17) and Plaintiff was unable to attend the internship site on March 3, 2017, because Dr. Neal was not going to be at on-site within the district.

42. On March 2, 2017, Plaintiff returned to the internship site, for a brief time to give a scheduled presentation on Response to Intervention information.

43. On this same day, Plaintiff advised Dr. Neal and the principal of the traditional school, Mr. Marcus Pina, of a short-term disability that Plaintiff need to do a mobile electroencephalogram that would occur during a multidisciplinary evaluation meeting in which Plaintiff would be unable to chew on anything. Mr. Marcus Pina and Dr. Neal agreed to the short-term accommodation that would occur on April 6, 2017.

44. Dr. Neal discussed, in a supervision meeting on March 8, 2017, how Plaintiff was providing substandard supervision as he was unable to provide the time necessary to appropriately supervise Plaintiff and the other intern under his supervision. He apologized for being unprepared and being unable to get Plaintiff the materials needed to complete the internship appropriately and for not getting the training manual for the internship as mentioned during the interview on January 19, 2017.

45. Plaintiff asked for the training binder at this point in which Dr. Neal did not have the ability to provide in violation of the internship volunteer contract and the

Principle of Professional Ethics, presented by the National Association of School Psychologists *Standard IV.4.2, Standard IV.4.3, Standard IV.4.4*.

46. During a bi-weekly supervision on March 10, 2017, after Dr. Neal was informed by Plaintiff that Plaintiff had not received anything from human resources regarding Plaintiff's responsibilities in the school psychology internship position or an employee manual, Dr. Neal asked Plaintiff to send him the information that was provided by human resources.

47. Plaintiff also informed Dr. Neal, that Ms. Quisberg from Human Resources informed Plaintiff that Plaintiff would need to discuss an accommodation with Plaintiff's direct supervisor.

48. Dr. Neal discussed with Plaintiff the difference between special education law, Arizona law, and federal law for accommodations on March 21, 2017. During this supervision, Dr. Neal expressed that Human Resources should have given Plaintiff more information regarding the position and taken Plaintiff's ADA paperwork but because Plaintiff was an intern (even though there was the potential for being offered a position), the administration was viewing the need for accommodation as a special education issue.

49. A conference call occurred on March 22, 2017, between Plaintiff's internship supervisor at the University and Plaintiff. Dr. Neal was to take part in the conference call and had agreed to attend more than three weeks prior to the call but did not attend this phone conference to discuss various aspects of the internship. Dr. Neal was called, texted, and emailed, but there was no response from him until the next day.

50. On March 24, 2017, Plaintiff was asked to move offices to a classroom in the back of Kings Ridge Academy and was advised by Dr. Neal that the special education teachers around the classroom would be extremely helpful for any questions Plaintiff had.

51. Plaintiff was unable to gain access to any resources for the next three business days due to a lack of appropriate set-up by the District's information technology team. Some electronic resources were never provided to Plaintiff.

52. During the bi-weekly supervision on March 29, 2017, Plaintiff was advised that Plaintiff inappropriately used the meeting rooms. Plaintiff reminded Dr. Neal that Plaintiff had yet to receive procedures on how the school would like various tasks to be performed including the training manual Plaintiff had been promised in the interview or even an employee handbook. Plaintiff also informed Dr. Neal that, due to computer issues, Plaintiff did not have access to conference rooms schedules. Dr. Neal advised Plaintiff that he would check into this and attempt to get Plaintiff the appropriate documentation.

53. On March 31, 2017, Plaintiff attended a supervision meeting that included Dr. Neal and Associate Superintendent, Mr. Ruben Gutierrez. During this meeting, Plaintiff discussed with the two supervisors the need for the specific medical accommodation (lip ring), explaining how it does not provide a chewing sensation but taste oral stimulation and tactile oral stimulation without chewing, how it does not spread germs, and does not hurt Plaintiff's jaw or mouth. Plaintiff also explained the social implications of chewing gum in a general education classroom where it is prohibited in the student handbook.

54. The result of this meeting ended with each supervisor agreeing that Plaintiff's lip ring was a reasonable accommodation and requested more information from an MD or Ph.D.

55. During the same supervision on March 31, 2017, Dr. Neal and Mr. Ruben Gutierrez asked if Plaintiff would return to the Riverside Elementary School District after the internship, to work with the technology department doing *Response to Intervention* and

special education data analysis. Plaintiff agreed and again asked for an employee manual and training manual for proper procedures within the district.

56. During the April 3, 2017, morning bi-weekly supervision Plaintiff provided the September 2015 Neuropsychological report to Dr. Neal. Plaintiff asked Dr. Neal if this was going to be enough information for an accommodation or if he would need something from my Neurologist or university to support the agreed upon accommodation. Dr. Neal advised the Neuropsychological report should be enough to support Plaintiff's needs since it was completed by a Ph.D.

57. During this supervision, Plaintiff received the employee handbook for the first time but was not provided the training manual or grading sheets (Dr. Neal admitted he did not create the binder or finish the grading of Plaintiff's performance).

58. On April 4, 2017, Plaintiff started an impromptu supervision meeting with Dr. Neal and voiced concerns of various district employees allegedly having work related issues with Plaintiff. Dr. Neal stated there was nothing to worry about and to focus on working on assessments, reports, and paperwork to assist student access to the services.

59. During this supervision meeting, Dr. Neal and Plaintiff discussed how the employee handbook does not specify facial piercings as an unprofessional appearance but does discuss the wearing of jeans as unacceptable.

60. They also discussed Plaintiff's lack of gender association and desire to wear a professional skirt, button up shirt, tie, vest, sports coat, and make-up to further accommodate the District's idea of professionalism. Dr. Neal requested Plaintiff not dress in such a way that would cause further discomfort for the District's administration and agreed that it was odd no one had said anything about Plaintiff's blatant violations of the employee dress code (Plaintiff had worn jeans and certain footwear deemed inappropriate).

61. On April 4, 2017, Dr. Neal also asked Plaintiff to send him the information that was sent to Plaintiff's school and provided by The District's Human Resources Department. Plaintiff advised Dr. Neal that such information had already been provided. Per Dr. Neal's request, Plaintiff resent the information on April 6, 2017.

62. During the supervision meeting on April 5, 2017, Plaintiff reminded Dr. Neal about the multidisciplinary evaluation team meeting Plaintiff needed to attend with teachers and a parent which was going to take place on April 7, 2017. Dr. Neal agreed he would be there, especially since Plaintiff was going to be utilizing an accommodation for the mobile electroencephalogram during the meeting.

63. Plaintiff was called into Dr. Neal's office in the afternoon of April 6, 2017, after sending Dr. Neal the requested material and was asked to either backdate the *school psychology intern responsibilities* paperwork to February 13, 2017, or risk losing the internship.

64. During the same meeting, Plaintiff was also given two papers to sign regarding the approved accommodation and various supervisions regarding the lip ring. Plaintiff requested copies of the documents, but they were not provided.

65. On April 7, 2017, Plaintiff reminded Dr. Neal about the upcoming multidisciplinary evaluation meeting and that Dr. Neal stated he would be at the meeting to assist.

66. Plaintiff had a medical procedure and returned to campus to find that Dr. Neal was not present at this meeting as requested or promised. The meeting did not go as expected and Plaintiff's ability to help in the meeting was limited due to the fact that the District had failed to provide Plaintiff with access to the appropriate resources.

67. During a subsequent supervision meeting with Dr. Neal, Plaintiff was advised the situation was handled professionally by Plaintiff and the abruptness of the

presentation of Plaintiff's report was accurate despite concerns for not using numerical information.

68. Plaintiff was also advised by the Speech and Language Supervisor that Plaintiff's excitement caused the teacher in the meeting to be defensive and could have caused her to perceive Plaintiff as insensitive to her position.

69. Plaintiff then asked Dr. Neal why he was unable to attend the meeting and was advised that Dr. Neal had not discussed Plaintiff's temporary accommodation with the administration and needed to discuss this with them.

70. When Plaintiff asked specifically about concerns with communication and the training that was to be provided, Dr. Neal smiled and sent Plaintiff home because the presence of the mobile electroencephalogram was causing perception problems for other people in the school district, specifically his supervisors.

71. On April 9, 2017, Plaintiff was called at 8:04 pm by Dr. Neal and asked not to return to Riverside Elementary School District on Monday, especially if the mobile electroencephalogram was still on Plaintiff's head.

72. During the forced time off-site, away from the internship on April 10, 2017, Plaintiff was contacted again by Dr. Neal twice. The first time was at 3:49 pm where they both discussed the lack of acceptance of individuals needing accommodations, and that Plaintiff needed to get items from the classroom/office, the next day.

73. Plaintiff was contacted again at 6:48 pm, which was the last electronic communication between Dr. Neal and Plaintiff where Dr. Neal asked that Plaintiff call him back.

74. Plaintiff met with Dr. Neal and Mr. Ruben Gutierrez on April 11, 2017 and Plaintiff was given a termination of internship letter discussing the reason for Plaintiff's

termination was wearing a facial piercing or utilizing the previously approved accommodation, which was in direct violation of the employee dress code.

75. This document did not discuss the previous approval of the accommodation that happened on March 31, 2017. The document also discussed an unprofessional communication with a community member, and when Plaintiff inquired about which community member, Dr. Neal and Mr. Ruben Gutierrez were unable to give the name or title of the community member, or what had happened, or when the event had occurred.

76. Plaintiff then asked about getting the appropriate documents for the internship signed and was told all documents for grading and hours would be signed by Dr. Neal, if Plaintiff emailed documents to him.

77. As Plaintiff attempted to leave to discuss the termination with the District's Human Resources office, Mr. Ruben Gutierrez told Dr. Neal to make sure Plaintiff did not go anywhere but out the front door. Dr. Neal blocked Plaintiff from going to the Human Resources office.

78. Initially, Plaintiff was unable to provide the individual hour sheets or daily log for Dr. Neal to sign because Plaintiff was never given the resources at Kings Ridge to print which prevented Plaintiff from printing out the necessary documentation for the internship that Dr. Neal needed to sign.

79. On April 12, 2017, Plaintiff sent Dr. Neal an email with the appropriate documents for hours and daily logs for which Plaintiff received no response.

80. This email was sent again on April 17, 2017, and Dr. Neal, again provided no response.

81. As of April 22, 2017, neither Plaintiff or his internship supervisor at the University had heard from Dr. Neal regarding the signing of the required hour logs, daily logs, or grading sheets.

82. Plaintiff made a number of other attempts to contact Dr. Neal to get him to complete the necessary paperwork, without success.

83. On June 9, 2017, Plaintiff went to the district office in the afternoon to obtain the signatures required for the internship and was met by Dr. Neal's assistant, who pulled Dr. Neal out of a training session he was given, to sign the daily logs and completed hours forms.

84. Plaintiff inquired about the objective and subjective grading forms that were given to Plaintiff, and Dr. Neal advised he had not filled them out and would not be completing them.

85. Without the necessary hours or paperwork completed, Plaintiff would be unable to receive credit for the internship and would be required to obtain and complete another internship, which would not occur until the Spring semester of 2018.

86. Subsequently, Dr. Neal refused to provide Plaintiff with a reference or recommendation for other opportunities.

87. Plaintiff attempted to contact other potential resources for internships including the following: Southwest Autism Resource and Research Center, Gentry Pediatric Behavioral Services, Glendale Elementary School District, Kyrene Elementary School District, Educational Behavioral Systems, Arizona Department of Juvenile Corrections, Devereux, Chandler Unified School District, Casa Grande Elementary School District, Prescott Valley School District, Phoenix Union High School District, Center for Autism Related Disorders, S.E.E.K. Arizona, Sunbelt Staffing, Soliant Health, Accountable Healthcare Staffing, Nova Health Therapies, Microsoft (Known opportunity which Dr. Neal turned down recommending me for a position), Uber, Phoenix Children's Hospital, Banner Behavioral Health, Jewish Family and Children Services, Capella University, Arizona State University, University of Arizona, Northern Arizona University,

RAND, Pearson, Psychological Assessment Resource, and Western Psychological Services – Educational and Psychological Assessment.

## COUNT ONE

## VIOLATION OF THE ADA

### (Discrimination)

88. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

89. At all times relevant hereto, Defendant has been subjected to the requirements of the ADA.

90. At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(C) or regarded as a person with an impairment as defined by the Act.

91. Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job with reasonable accommodations.

92. That the District discriminated against Plaintiff when it failed to accommodate Plaintiff's disability and subsequently prematurely terminated Plaintiff prior to the completion of his internship and the ability to be employed by the District.

93. Defendant's actions amount to a violation of the ADA, which prohibits discrimination on the basis of disability.

94. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has sustained economic damages in the form of loss of wages and the value of job benefits for having to redo another internship and being denied the employment opportunity to work for the District in an amount to be proven at trial.

95. In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to their reputation due to their termination, and other non-pecuniary losses all in an amount to be proven at trial.

## COUNT TWO
## VIOLATION OF THE ADA
### (Retaliation)

96. By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

97. At all times relevant hereto, Defendant has been subjected to the requirements of the ADA.

98. At all times relevant hereto, Plaintiff was an individual with a disability as defined under the Americans with Disabilities Act, 42 U.S.C. § 12102 (1)(C) or regarded as a person with an impairment as defined by the Act.

99. Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job with reasonable accommodations.

100. Following Plaintiff's various requests for accommodation and requests to secure his rights, Plaintiff was retaliated against by Defendant by terminating Plaintiff's internship and depriving him of the opportunity to obtain employment with the District.

101. Defendant's actions amount to a violation of the ADA, which prohibits retaliation against employees who exercise their rights under the ADA or make complaints relating to discrimination the basis of disability.

102. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has sustained economic damages in the form of loss of wages and the value of job

benefits for the lost employment opportunity with Defendant or for the lost compensation resulting from being required to redo his internship in an amount to be proven at trial.

103. In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to his reputation due to his termination, and other non-pecuniary losses all in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. Any and all equitable relief necessary to correct and alleviate Defendant's discriminatory and retaliatory conduct in the future;
2. For General and Special damages to be proven at trial;
3. For compensatory damages relating to emotional distress as proven at trial;
4. For reasonable attorneys' fees and costs; and
5. For such other relief, the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 14th day of September 2021.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Bradley H. Schleier
Bradley H. Schleier
3101 North Central Ave., Suite 1090
Phoenix, Arizona 85012
Brad@SchleierLaw.com
*Attorneys for Plaintiff Addam Brown*