1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Addam Brown,                          No. CV-21-01569-PHX-DJH

10                  Plaintiff,             **ORDER**

11   v.

12   Riverside Elementary School District No. 2,

13                  Defendant.

14

15        Defendant Riverside Elementary School District ("Defendant" or "District") has

16   filed a Motion for Summary Judgment (Doc. 34)[1] as to Plaintiff Addam Brown's

17   ("Plaintiff") employment discrimination and retaliation claims under Title I of the

18   Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[2]

19        In seeking summary judgment on these claims, Defendant argues that Plaintiff was

20   not an employee under the ADA.[3]  The Court must decide whether Plaintiff's volunteer

21   internship position at the District made him an employee under the ADA.  For the reasons

22   below, the Court finds that Plaintiff was an employee.  Defendant's Motion for Summary

23   _____

24   [1] The matter is briefed.  Plaintiff filed a Response (Doc. 41), and Defendant filed a Reply
     (Doc. 43).

25   [2] Plaintiff has also filed a Motion for Summary Judgment (Doc. 46) seeking to preclude
26   Defendant's affirmative defense of mitigation of damages.  The Court will address this
     motion in a separate Order.

27   [3] Defendant requested oral argument on the matter.  The Court finds that the issues have
28   been briefed and oral argument will not aid the Court's decision.  Defendant's request is
     therefore denied.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral
     hearings); LRCiv 7.2(f) (same).

1   Judgment is denied.

2   **I.      Background[4]**

3            **A.      Plaintiff's Internship at the District**

4            The District hired Plaintiff as a volunteer School Psychologist Intern ("intern") from

5   January 20, 2017, to April 11, 2017.  (Doc. 34-1 at 23; Doc. 41-10 at 2).  During that time,

6   Plaintiff was a doctoral candidate at Capella University in psychology with a specialization

7   in school psychology; he was awarded his degree in June of 2021.  (Doc. 41-2 at 3).

8            Plaintiff's internship was approved by the District's Governing Board.  (Doc. 34-1

9   at 86).  As a condition of his employment, Plaintiff signed a volunteer agreement (the

10  "Agreement") indicating his internship was voluntary and unpaid.  (Doc. 34-1 at 17; 90).

11  However, the Agreement also stated Plaintiff was eligible to receive an incentive package,

12  consisting of a laptop and a $100.00 professional development stipend, "upon completion

13  of internship as funding permits."  (Doc. 41-3 at 9–10).

14           During his internship, Plaintiff reported to the special education director,

15  Dr. Stephen Neal ("Dr. Neal").  (Doc. 41-2 at 9).  He interacted with the students and the

16  staff at the District, participating in twenty-nine meetings with students and twenty

17  meetings with parents and staff.  (Doc. 41-2 at 10; Doc. 41-6 at ¶¶ 18–19).  Plaintiff claims

18  Dr. Neal attended six of the student meetings and none of the meetings with parents and

19  staff.  (Doc. 41-6 at ¶¶ 18–19).

20           **B.      Plaintiff Requests Accommodation**

21           On February 13, 2017, Plaintiff spoke with Dr. Neal about potential

22  accommodations for his lip ring.  (Doc. 41-6 at ¶¶ 4, 5; Doc. 41-9 at 1).  Plaintiff explained

23  wearing the ring helped with his sensory needs, but Dr. Neal advised him it was against

24  school policy.  (Doc. 41-6 at ¶ 5).  Plaintiff then attempted to chew gum instead of wearing

25  it.  (*Id.* at ¶ 6).  Plaintiff later complained that chewing gum hurt his jaw and that he wanted

26  to request another accommodation.  (*Id.* at ¶ 11).  Plaintiff stated Dr. Neal informed him it

27  was not a problem and "that the lip ring was a reasonable accommodation in this instance."

28  ───────────────
[4] Unless otherwise noted, the following facts are undisputed.

1   (*Id.*)

2          **C.      Plaintiff's Termination**

3          On April 11, 2017, Plaintiff received a "Termination of Internship" letter from Dr.

4   Neal terminating his internship because Plaintiff had continued to wear his lip ring despite

5   his supervisors informing him that the piercing violated school policy.  (Doc. 41-10 at 2)

6   (the "Termination Letter").   The Termination Letter further stated Plaintiff's internship

7   agreement obligated him to follow "all District policies, including Governing Board Policy

8   GBEB,[5] Staff Conduct [and that] [i]nsubordination is a direct violation of Policy GBEB."

9   (*Id.*)

10         **D.      Plaintiff's Complaint**

11         In September 2021, Plaintiff filed a Complaint (Doc. 1) against Defendant alleging

12  employment discrimination and retaliation claims under the ADA.   (*Id.* at ¶¶ 88–103).

13  Plaintiff alleges the District discriminated against him when it failed to accommodate his

14  disability and prematurely terminated him.  (*Id.* at ¶ 92).  Plaintiff also alleges the District

15  retaliated   against   him   for   requesting   accommodations   related   to   his   disability.

16  (*Id.* at ¶ 100).

17         Defendant moves for summary judgment, arguing Plaintiff was not an employee of

18  the District and thus he cannot bring employment discrimination or retaliation claims under

19  the ADA.  (Doc. 34 at 1).

20  **II.     Legal Standard**

21         A court will grant summary judgment if the movant shows there is no genuine

22  dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

23  Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is

24  genuine when a reasonable jury could return a verdict for the nonmoving party.  *Anderson*

25  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Here, a court does not weigh evidence

26  to discern the truth of the matter; it only determines whether there is a genuine issue for

27  trial.  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).  A fact is

28

---

[5] The Termination Letter does not define GBEB.

1  material when identified as such by substantive law.  *Anderson*, 477 U.S. at 248.  Only

2  facts that might affect the outcome of a suit under the governing law can preclude an entry

3  of summary judgment.  *Id.*

4       The moving party bears the initial burden of identifying portions of the record,

5  including pleadings, depositions, answers to interrogatories, admissions, and affidavits,

6  that show there is no genuine factual dispute.  *Celotex*, 477 U.S. at 323.  Once shown, the

7  burden shifts to the non-moving party, which must sufficiently establish the existence of a

8  genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio

9  Corp.*, 475 U.S. 574, 585–86 (1986).  The evidence of the non-movant is "to be believed,

10  and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  But

11  if the non-movant identifies "evidence [that] is merely colorable or is not significantly

12  probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).  "A

13  conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

14  insufficient to create a genuine issue of material fact."  *F.T.C. v. Publ'g Clearing House,

15  Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

16  **III.    Discussion**

17       Defendant moves for summary judgment on both of Plaintiff's claims, arguing

18  Plaintiff was not an employee of the District, but an unpaid intern and thus not protected

19  by the ADA.  (Doc. 33 at 9).  Plaintiff opposes, arguing the evidence supports the District

20  treated him like an employee during his internship and thus he is protected by the ADA.

21  (Doc. 41 at 13).

22      **A.    The Master-Servant Relationship**

23       Plaintiff must be an "employee" of the District to bring a valid retaliation and

24  employment discrimination claim under the ADA.  *See* 42 U.S.C. § 12111(5)(A).  The

25  ADA defines "employee" to mean "an individual employed by an employer."  *Id.* at

26  § 12111(4).  Determining whether an individual is an employee depends on if their

27  relationship with the alleged employer mirrors the "conventional master-servant

28  relationship as understood by common-law agency doctrine."  *Clackamas*

- 4 -

*Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 445 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)).  "At common law the relevant factors defining the master-servant relationship focus on the master's control over the servant." *Id.* at 448.  The Ninth Circuit has adopted six factors to determine whether a non-traditional worker is an employee:

> 1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
>
> 2) Whether and, if so, to what extent the organization supervises the individual's work;
>
> 3) Whether the individual reports to someone higher in the organization;
>
> 4) Whether and, if so, to what extent the individual is able to influence the organization;
>
> 5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;
>
> 6) Whether the individual shares in the profits, losses, and liabilities of the organization.

*Fichman v. Media Center*, 512 F.3d 1157, 1160 (9th Cir. 2008) (citing *Clackamas*, 538 U.S. at 449–50)); *see also Solander v. S. Ponderosa Stables Inc.*, 2015 WL 4139045, at *3 (D. Ariz. July 9, 2015) (noting that this test is useful for determining whether a volunteer may nonetheless qualify as an employee under the ADA).[6]  These factors are not exhaustive, and no factor is decisive.  *Fichman*, 512 F.3d at 1160.  Instead, whether an individual is an employee depends on "all incidents of the relationship." *Id.*  The determination of whether an employer-employee relationship exists under the ADA is a question of law and may be resolved on summary judgment when the material facts are

---

[6] Both parties cite to the Equal Employment Opportunity Commission's ("EEOC") Compliance Manual for support.  (Docs. 41 at 12–13; 43 at 8–9).  The EEOC Guidelines are "not binding on the courts," but do "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (citation omitted).  However, the Court has made an independent determination that Plaintiff is an employee under the factors adopted by the Ninth Circuit.  It need not look to the EEOC guidelines for additional guidance.

1  undisputed. *Burt v. Broyhill Furniture Indus., Inc.*, 2006 WL 2711495, at \*7 (D. Ariz.

2  Sept. 18, 2006) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988));

3  *Poland v. United States Att'y Gen.*, 2012 WL 13001837, at \*6 (C.D. Cal. July 30, 2012)

4  (citing *Hale v. State of Ariz.*, 967 F.2d 1356, 1360 (9th Cir. 1992), *on reh'g*, 993 F.2d 1387

5  (9th Cir. 1993)).[7]

6      **B.      Plaintiff is an Employee at Common Law**

7      The Court finds Defendant's relationship with its school psychologist interns

8  reflects a conventional master-servant relationship.

9      As to the first factor, Defendant hired Plaintiff as an intern and terminated Plaintiff's

10  internship. (Doc. 34-1 at 23; Doc. 41-10 at 2). The Agreement Plaintiff signed included a

11  confidentiality agreement and a performance responsibilities document, outlining the

12  responsibilities of his work as an intern. (Doc. 34-1 at 17–22). The Agreement also

13  indicated Plaintiff was subject to "all applicable laws, School policies, and regulations"

14  contained in the employee handbook. (*Id.* at 18, 157). In the acknowledgment section, the

15  Agreement clearly stated the District sets the rules and regulations of Plaintiff's work and

16  noted the Agreement was "not intended to be an exhaustive list of all responsibilities,

17  duties, and skills required of *employees* who hold this position. It is our expectation that

18  every *employee* will offer his/her services wherever and whenever necessary to ensure the

19  success of the District's goals." (*Id.* at 22) (emphasis added). Plaintiff's Termination

20  Letter also stated the grounds for his termination were based on his "direct violation[s]" of

21  the District's policies. (Doc. 41-10 at 2). The first factor weighs in favor of an employee-

22  employer relationship.

23      As to the second and third factor, it is undisputed that the District supervised

24  Plaintiff's work. Indeed, Plaintiff's Agreement states his position reports to Dr. Neal, and

25

26  [7] Although *Hale* concerned the Fair Labor Standards Act and not the ADA, the Ninth
27  Circuit has stated that "[m]ost courts consider the definition of 'employee' to be uniform
   under federal statutes where it is not specifically defined, including the ADEA and
28  ADA." *Fichman v. Media Ctr.*, 512 F.3d 1157, 1161 (9th Cir. 2008).

1    Plaintiff further testified he did so.  (Docs. 34-1 at 20; 41-2 at 9).  Plaintiff's Agreement

2    indicated he would meet with Dr. Neal for two hours for a forty-hour work week or one

3    hour for a twenty-hour work week.  (Doc. 34-1 at 22).  Defendant cites to *Solander* to argue

4    the general supervision by Dr. Neal "would be present in any purely volunteer labor

5    relationship."  (Doc. 43 at 6 citing 2015 WL 4139045, at *4).  Defendant misapprehends

6    *Solander*.    Although  the  court  noted  supervision  is  present  in  any  volunteer  labor

7    relationship, it also stated that the supervision exerted in *Solander* was insufficient to

8    overcome the balance of the undisputed evidence.  2015 WL 4139045, at *4.  In other

9    words, the court found the lack of a formal hiring process, the lack of no formal rules or

10   regulations, the lack of influence the volunteers' exerted on the operation, and the lack of

11   written agreements or contracts outweighed the fact that the volunteers were supervised.

12   *Id.*  None of those counter facts exist here, and the Court accordingly rejects Defendant's

13   argument.  In fact, the opposite is true.  Defendant hired and fired Plaintiff, Plaintiff

14   reported to Dr. Neal, Plaintiff was governed by a set of performance responsibilities and

15   subject to the employee handbook, and Plaintiff worked directly with the students, teachers,

16   and parents.  (Doc. 34-1 at 17–22, 157).  The second and third factors weigh in favor of an

17   employee-employer relationship.

18       As to the fourth factor, Plaintiff's responsibilities included providing short-term

19   counseling  to  students,  aiding  staff  in  behavioral  management,  completing  psycho-

20   educational evaluations, and interpreting assessment data to parents and district staff.

21   (Doc. 34-1 at 20–21).  Indeed, the record reflects Plaintiff held twenty-nine meetings with

22   students and twenty meetings with parents and staff.  (Doc. 41-2 at 10; Doc. 41-6 at ¶¶ 18–

23   19).  It is also undisputed that Dr. Neal did not attend any of the meetings Plaintiff held

24   with the parents and staff and attended only six of the twenty-nine meetings Plaintiff held

25   with the students.  (Doc. 41-6 at ¶¶ 18–19).  All these performance responsibilities indicate

26   Plaintiff exerted a considerable degree of influence on the psychological services the

27   District offered to its students.  The fourth factor weigh in favor of an employee-employer

28   relationship.

1    The only factors disfavoring a common-law employee relationship are the fifth and
2   sixth.  That is, the District did not intend for Plaintiff to be treated as an employee and their
3   Agreement states a volunteer "is not considered an employee."   (Doc. 34-1 at 17).
4   Plaintiff's internship was also unpaid, and he received no health benefits.  (Doc. 34-1 at
5   17, 90; Doc. 41-2 at 8–9).   But Plaintiff's Agreement also indicated he was eligible to
6   receive an incentive package upon completion of his internship as funding permitted, so
7   even these factors are undermined by the circumstances of Plaintiff's Agreement.  (*Id.* at
8   22).  Defendant also argues that Human Resources told Plaintiff there was no paperwork
9   for him to fill out regarding his requested accommodation because he was a volunteer.
10   (Doc. 43 at 6).  But Defendant's argument is belied by the record on two grounds.  First,
11   Dr. Neal met with Plaintiff to discuss potential accommodations after Plaintiff's Human
12   Resources meeting and noted their conversation involved "accommodations for ring: gum
13   and/other legal chewable items."  (Doc. 41-9 at 1).  Second, Plaintiff was ultimately
14   terminated because he did not comply with the accommodation the District granted him.
15   (Doc. 41-10 at 1–2).  If Plaintiff was a volunteer, Dr. Neal would have informed him that
16   the District was not required to provide him accommodations under the ADA.  The
17   opposite occurred here.

18    In sum, the six *Clackamas* factors and the undisputed facts in this case show as a
19   matter of law that Plaintiff's intern position made him an employee of the District.  Factors
20   one through four show the District treated Plaintiff as an employee.  It is undisputed that
21   the District hires and fires the interns; interns are governed by a set of rules and
22   responsibilities; interns report to a director; and interns influence the District's
23   psychological services operation by providing counseling to students and staffing
24   assistance.  *Fichman*, 512 F.3d at 1160.  By contrast, factors five and six are the only factors
25   disfavoring a master-servant relationship: the Agreement signed by Plaintiff indicates a
26   volunteer is not considered an employee of the District and that Plaintiff's received no pay
27   or health benefits.  But the Court finds these facts insufficient to overcome the balance of
28   the undisputed evidence.  *See Waisgerber v. City of Los Angeles*, 406 F. App'x 150, 152

1    (9th Cir. 2010) (noting that the lack of renumeration was not dispositive and that other

2    evidence should be considered in determining whether an individual is an employee under

3    the ADA).

4          Last, the Court rejects Defendant's argument that Plaintiff must allege he received

5    renumeration in the form of substantial benefits or he cannot be considered an employee.

6    (Doc. 43 at 2 citing *Waisgerber*, 406 F. App'x at 152).[8] This is not so.  Indeed, individuals

7    who are not paid a salary or wage may still be employees under the ADA.  *Waisgerber*,

8    406 F. App'x at 152.  The Ninth Circuit explicitly stated "[t]he lack of remuneration was

9    not dispositive" in determining whether a person is an employee, and "the fact that a person

10   is not paid a salary does not necessarily foreclose the possibility that the person is an

11   'employee' for purposes of federal statutes . . . ."  *Id.* at 151–52.  Thus, even though

12   Plaintiff received no compensation from the District, this fact is not dispositive and

13   otherwise insufficient to alter the Court's conclusion that the District treated Plaintiff as an

14   employee.  *See Fichman*, 512 F.3d at 1160 (noting that whether an individual is an

15   employee depends on "all incidents of the relationship").

16         Because Plaintiff's internship position qualifies as an employee under the ADA,

17   Defendant's Motion for summary judgment is denied.  *See* 42 U.S.C. § 12111(5)(A).

18         Accordingly,

19         **IT IS HEREBY ORDERED** that Defendant Riverside Elementary School

20   District's Motion for Summary Judgment (Doc. 34) is **denied**.

21         Dated this 8th day of August, 2023.

22

23   _____
     Honorable Diane J. Humetewa

24        United States District Judge

25

---

26   [8] Defendant cites to out-of-circuit cases to support the proposition that control loses
     significance in the absence of compensation.  (Doc. 43 at 6 citing *Haavistola v. Cmty. Fire*
27   *Co. of Rising Sun, Inc.*, 6 F.3d 211, 220 (4th Cir. 1993); *Doe v. Lee*, 943 F. Supp. 2d 870,
     875 (N.D. Ill. 2013); *Todaro v. Twp. of Union*, 27 F. Supp. 2d 517, 534 (D.N.J. 1998)).
28   But these cases are neither binding nor persuasive under these facts, and the Ninth Circuit
     has made clear that a lack of remuneration is not dispositive.